### J. E. HATCHER *v.* J. A. RANGE ET AL.

#### No. 2331. Decided June 9, 1904.

**1.—Slander—Imputing Unchastity.**

The courts have followed reluctantly the rule of the common law that spoken words imputing unchastity to a female are not actionable per se. (Pp. 88, 89.)

**2.—Same—Statute.**

The provision of the Penal Code introduced by the revision of 1879 (article 645) making it an offense to impute want of chastity to a female, married or unmarried, upon the principle that an indictable act inflicting on an individual injury different from that suffered by the public will give him a right to a civil action therefor, is such a change of the law as authorizes a departure from previous decisions holding such wrong actionable only on proof of special damage. (P. 90.)

**3.—Same.**

Under the law as it exists in this State, words spoken or written which falsely and maliciously or falsely and wantonly impute to a female want of chastity, are actionable without showing special damage arising therefrom. (P. 90.)

Questions certified from the Court of Civil Appeals for the second District, in an appeal from Clay County.

*W. T. Allen,* for appellant.—Words imputing unchastity to a woman, however gross and injurious they may be, are not actionable unless she can prove that they directly caused her special damages. Special damages must be alleged and proved in all cases except (1) cases of libel; (2) when the words spoken impute to the plaintiff the commission of an indictable offense; (3) or a contagious disease; (4) or are spoken of him in the way of his profession or trade or disparage him in an office of public trust. Linney *v.* Maton, 13 Texas, 449; McQueen *v.* Fulgham,

27 Texas, 463; Ross v. Fitch, 58 Texas, 149; Odgers on Libel and Slander, sec. 83, p. 75, and sec. 308, p. 277.

*Denny & Taylor,* for appellees.—There was no error in overruling defendant's second special exception to the plaintiff's first amended original petition, for the reason that words that impute to persons of whom they are spoken some crime or offense punished criminally by law are actionable per se, and it is unnecessary to allege and show special damages. Zeliff v. Jennings, 61 Texas, 466.

An accusation is actionable whenever an offense is charged which, if proved, would subject the accused person to a punishment, though not such as is known technically as an ignominious punishment, if the accusation be such as to bring disgrace on the person of whom the words are spoken. Words which impute to the person of whom they are spoken a moral turpitude which would exclude him from association with respectable persons are actionable per se. The case of Zeliff v. Jennings, above cited, discusses fully the question as to special damages and is directly in point on the question raised by appellant in his third assignment of error, and holds that where the language used is actionable per se it is not necessary to allege special damages.

BROWN, Associate Justice.—This is a certified question from the Court of Civil Appeals of the Second Supreme Judicial District. The statement and questions are as follows:

"This suit was instituted in the District Court of Clay County, Texas, by the appellees, J. A. Range and Maggie Range, for actual and exemplary damages caused by slanderous language uttered by appellant in reference to the said Maggie Range. The trial resulted in a verdict and judgment in appellees' favor for $1500 actual and $4000 exemplary damages, from which judgment an appeal has been duly prosecuted and the cause is now regularly pending before us for disposition.

"Omitting unnecessary statements, the appellees' petition is as follows: 'That heretofore, to wit, on or about the 5th day of May, 1903, and many times prior thereto and subsequent thereto up to the time of the filing of this suit, the defendant, J. E. Hatcher, in Clay County, Texas, falsely, fraudulently and willfully uttered, published and circulated slanderous statements injuriously affecting the chastity of the said Maggie Range, and publicly stated to one W. H. Bombarger, and divers other good citizens in Clay County, Texas, that two married men have been and are now at it with the said Maggie Range, or can have all the fun they want with her, meaning thereby that the said two men had, and were now having, habitual carnal intercourse with the said Maggie Range, and had lived a life of lewdness with her and are now so living, and that she in conjunction with them are now and had been guilty of adultery and fornication. And also on or about the same date falsely, fraudulently and willfully stated to one J. N. Crain and divers other good citizens of Clay County, Texas, that the said Maggie Range

was a bad girl and is now a bad woman, and had always been bad, and that she was a damn whore and a damn bitch or damn slunk, meaning thereby that the said Maggie Range was unchaste and was not a virtuous woman, and had never been virtuous as a girl. And that the said J. E. Hatcher also about the same time stated to C. E. Latham that the said Maggie Range was a whore, and that the reason that the said J. A. Range would not rent him (Latham) his place for this year, 1903, was because he was jealous of him, the said Latham, and his wife, the said Maggie Range, meaning thereby that there had been an illicit carnal intimacy existing between the said C. E. Latham and the said Maggie Range. That said accusations and charges were without foundation in fact, and were wholly false, and were at the time they were made by the defendant known to him to be so, and were willfully and wantonly made to injure the plaintiff. That the plaintiff Maggie Range is now a virtuous and chaste woman, and has always been so from infancy, and has always been so reputed and esteemed and regarded by her neighbors and friends, and by all who knew her. That the defendant, J. E. Hatcher, very much disliked the plaintiff, and to vent his spleen against him has sought to injure and besmirch the reputation and character of his wife, Maggie Range, and to inflict shame and disgrace on both them and their children. That the uttering, publication and circulation of the said slanderous statements has greatly wounded the feelings of both plaintiffs and has caused both of said plaintiffs great mortification, and a sense of shame and disgrace, and great mental worry and suffering; that the said charges of moral turpitude made by defendant against plaintiffs has caused them to lose their high social standing and has greatly injured their fair name and reputation in the community where they live and where they are known. That plaintiffs have a family of children born of their said marriage, consisting of two girls and three boys and the fact that the said charges and slanderous statements have been made and circulated against the said Maggie Range, their mother, adds to the mortification and sense of shame that the plaintiffs feel, and fills their hearts with anguish and gloom, and injuriously affects the social standing of the entire family in the community where they live and among the people where they are known, and fixes and places upon the said plaintiffs and their said children a stain that will rest upon them and will follow them to their graves. That on account of the slanderous statements so made and circulated by the said defendant, plaintiffs have been actually injured and damaged in the sum of $5000, and they claim as exemplary damages for the willful and wanton circulation of said false statements the sum of $10,000.'

"Appellant answered by special exception to the petition, by general denial, and plea in justification that the statements imputed to appellant were true in fact.

"The evidence we think sufficient to support all of the material allegations of appellees' petition as above set out, and to negative appellant's plea of justification; but in submitting the case to the jury the court

among other things charged:  'I charge you the law applicable to this· case, as follows:  1.  If you find and believe from the testimony that the defendant, J. E. Hatcher, uttered and published the statements as alleged in plaintiffs' petitition, or any one or more of said statements as alleged in plaintiff's petition, imputing the want of chastity to Maggie Range, and you further find such statements untrue and that they were false and that plaintiff Maggie Range has been injured thereby and sustained damages, you will find for plaintiffs such actual damages as Maggie Range has sustained thereby.  2.  If you find for plaintiffs under the foregoing instruction, and you further find that such statements as are alleged in plaintiffs' petition were uttered and published maliciously and with intent to injure said Maggie Range by defendant, then you may also find for plaintiffs exemplary damages.'

"It is thus made apparent, we think, that the court treated the language imputing to appellee a want of chastity as actionable per se, which seems to accord with the decision of the Court of Civil Appeals for the Third District in the case of King v. Sassaman, 54 S. W. Rep., 304, 64 S. W. Rep., 937, and of the Court of Civil Appeals for the Fourth District in Patterson & Wallace v. Ella Frazier, 3 Texas Law Journal, 988.  We have been unable to adopt the view expressed in these cases that the decision in Zeliff v. Jennings, 61 Texas, 458, changes the rule as announced by our Supreme Court in Linney v. Maton, 13 Texas, 449; McQueen v. Fulgham, 27 Texas, 463, and Ross v. Fitch, 58 Texas, 149, to the effect that words imputing a want of chastity of similar import to those charged against appellant in this case are not actionable in the absence of proof of special damages, in view of which we deem it advisable to certify to your honors for determination, the following questions involved herein:

"1.  Are all of the words used by appellant, imputing a want of chastity to Maggie Range, actionable per se?  That is, will they support the verdict and judgment for actual and exemplary damages in the ab- · sence of proof of special damages?

"2.  If not, can it be said that special damages are alleged in appellees' petition?

"3.  Or, stating the ·questions in a different form, can it by any reasonable construction be said that the language charged imputes to Maggie Range an indictable offense, within the meaning of the Penal Code, articles 353 and 357, defining adultery and fornication, and of the fourth clause of article 413, defining a vagrant?

"4.  Or, in other words, did the court commit reversible error in giving the charge quoted?"

This court has reluctantly followed the rule of the common law that spoken words which impute to a female want of chastity are not actionable per se.  Linney v. Maton, 13 Texas, 449; McQueen v. Fulgham, 27 Texas, 464; Ross v. Fitch, 58 Texas, 148; Zeliff v. Jennings, 61 Texas, 458.

In Linney v. Maton, above cited, Judge Wheeler quoted from Bradt v. Towsley, 13 Wend., 254, as follows: "It is now too late to interrupt the current of authority adjudging that words charging a female with lewdness are not actionable, though it is very palpable that the presumption of damage is quite as strong as in any case in which it is presumed. For instance, damage is presumed if one charges a clergyman with intemperance or profligacy, because they tend to his temporal damage. So, a charge of dishonesty in a lawyer, bankruptcy in a merchant, ignorance in a physician, and many other cases; but where a charge of want of chastity is made against a female, which has a tendency to destroy her character and prospects in life, no action lies unless she can prove special damage. The courts have long regretted that they had not authority to judge differently; they have not the power, and legislators have not the inclination to do justice to injured female innocence. The courts, sensible of the injustice of the law in this respect, have shown an inclination to lean in favor of such plaintiffs, and any damages, however slight, have been held sufficient to sustain the action." Judge Wheeler said: "In some of the States this reproach of the common law has been effaced by legislative interposition. And that we have not had similar legislation is doubtless to be ascribed not to the cause imputed by Chief Justice Savage, but to inadvertence. The attention of the Legislature has not been called to the subject. The courts will doubtless go as far as any warrant can be found in the law in holding that any damage, however slight, will be sufficient to maintain the action."

In McQueen v. Fulgham, above cited, Judge Moore said: "It is insisted by the appellees that this court should declare that words charging a female with lewdness are actionable by the common law of this State. That this should be the law we entertain no question. It is a matter of regret and surprise that this blot upon the common law should have been suffered by legislative authority to remain so long a stigma upon our jurisprudence."

In Zeliff v. Jennings, above cited, Judge Stayton uses this language: "Character for moral turpitude bars the doors of society against its possessor, as completely as could a charge against one of having the most loathsome disease, which is held to be actionable per se; and it is difficult to see, if the one be actionable per se, why the other should not be. They may bring equally pecuniary loss and mental anguish."

From these quotations it is plain that the three eminent judges quoted were reluctant to follow precedents so unreasonable and unjust. We are equally bound by those precedents, unless there be present in this a sound reason why they should be disregarded which was not considered in those cases.

At common law libel was indictable; it was an offense against the public, therefore actionable. In his work on Noncontract Law, section 279, Mr. Bishop uses the following language: "Libel, with a very narrow margin of verbal slander, is one of the wrongs against the

public, punishable as crime. And it is one of the doctrines in our jurisprudence that he who suffers from crime specially, in a way or degree differing from the rest of the public, may have his civil action against the wrongdoer." The same writer, in section 71, says: "The doctrine in general terms is, that the civil wrong and the criminal are legally distinct things, though both may proceed from one act of the offender. If the injury is of a nature falling on the entire community an individual suffering from it only as others do can maintain no action against the wrongdoer, even should it in degree casually press more heavily upon him than upon others. But he who suffers a special damage may have his suit, though by reason of the public harm the defendant is also indictable." Generally an indictable act which inflicts an injury upon an individual different from that suffered by the public will give a right of action against the wrongdoer for reparation of the damage occasioned. Public nuisances are notable instances of which it is held that the private individual, who suffers damage different from that which flows to the public from a public nuisance, may have his action for the injury so inflicted upon him. Garitee v. Mayor, etc., 53 Md., 422; Grisby v. Clear Lake Water Works, 40 Cal., 396.

Prior to 1879 slander was not indictable in this State, but in the revision of our criminal code which took effect the 1st of September,. 1879, the revisers introduced a chapter upon the subject of slander in which is embraced the following article: "If any person shall, orally or otherwise, falsely and maliciously, or falsely and wantonly, impute to any female in this State, married or unmarried, a want of chastity,. he shall be deemed guilty of slander, and, upon conviction, shall be fined not less than one hundred nor more than one thousand dollars, and the jury may, in addition thereto, find a verdict for the imprisonment of defendant in the county jail not exceeding one year." Art. 645, Penal Code. This article of the code did not exist when the cases of Linney v. Maton and McQueen v. Fulgham were decided, and it was not noticed in the other two decisions cited. Under this provision of our criminal law slander is put upon the same footing with libel, as affecting the public good, and falls within the rule that any person who receives "special injury different from that which is inflicted upon the public by the perpetration of an act punishable at law may have redress for the injury so received," and in our opinion the change in the law in this respect justifies this court in departing from the common law rule heretofore maintained. We therefore conclude that under the law as it now exists in this State, words spoken or written which "falsely and maliciously, or falsely and wantonly," impute to a female want of chastity are actionable, without showing special damage arising therefrom.

To all of the questions we answer that there is no error in the charge submitted.