### EXPRESS PUB. CO. v. ISENSEE.
### (No. 7013.)

(Court of Civil Appeals of Texas. Austin. June 9, 1926. Rehearing Denied June 23, 1926.)

**1. Libel and slander ⊗══7(1).**

Publication which falsely charges one with crime, either in express language or by reasonable implication, is libelous per se.

**2. Libel and slander ⊗══22.**

It is not necessary that publication which falsely charges one with crime should charge crime in express terms to be libelous per se.

**3. Libel and slander ⊗══123(2)—In publication capable of more than one interpretation, criterion is effect upon mind of ordinary reader, and, in case of doubt about meaning, it is question of fact.**

If publication is capable of more than one interpretation or is ambiguous, criterion is, What effect would it have upon mind of ordinary reader? and in case of doubt about meaning of publication it is question of fact.

**4. Libel and slander ⊗══22 — Publication in newspaper of picture and name of plaintiff under caption "Held in Death," held by implication to charge commission of crime.**

Where newspaper published picture and name of plaintiff underneath caption "Held in Death," but article thereunder stated another person was held by police in connection with death of person while undergoing operation, such publication charged commission of crime.

**5. Libel and slander ⊗══21 — Publication of plaintiff's picture and name in newspaper underneath caption "Held in Death" was not libelous per.se, where picture was identified as that of plaintiff and article following applied to another person.**

In action against publisher for publishing in newspaper plaintiff's picture and name underneath caption "Held in Death," where article thereunder implying that crime had been committed applied to another person, publication *held* not libel per se, since it was admitted plaintiff had nothing to do with death therein, and picture was clearly identified as that of plaintiff, and publication as whole was ambiguous.

**6. Libel and slander ⊗══124(8)—In action for libelous newspaper publication, where proof fell short of establishing all elements of damages alleged, it was error to instruct that plaintiff was entitled to recover damages as set out in petition.**

In action for injury to reputation and feelings caused by libelous newspaper publication, where proof fell short of establishing all elements of damages alleged, it was error to instruct that plaintiff was entitled to recover damages as "set out in petition," since plaintiff could recover only damages proven under allegations, and evidence admitted under pleadings must be looked to in arriving at same.

**7. Libel and slander ⊗══103—Evidence as to reasons for request that plaintiff leave apartment house held improper, in action for injury to reputation by libelous newspaper publication.**

In action for injury to reputation and feelings caused by libelous newspaper publication, it was not error to exclude testimony that plaintiff was requested to leave her apartment house because she had made herself general nuisance and was about to cause other tenants to leave, since testimony was not proper in attacking her general reputation, nor to mitigate damages thereto.

Appeal from District Court, Hays County; M. C. Jeffrey, Judge.

Action by Mrs. Gertrude Isensee against the Express Publishing Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Denman, Franklin & Denman, of San Antonio, for appellant.

Adolph Seidemann and Schleyer & Triesch, all of New Braunfels, for appellee.

BAUGH, J. Appellee sued appellant for damages claimed as the result of the publication by appellant in the San Antonio Evening News, a daily newspaper, in the issue of March 21, 1925, of a photograph and article, alleged to have been libelous. The publication complained of was as follows: The caption read, "Held in Death." This caption was set forth in letters approximately one-eighth of an inch in height. It was about 1¼ inches long, set within a single column of said paper. Immediately underneath this caption occurred a small picture of appellee, with the name "Mrs. Gertrude Isensee" printed thereunder. Following underneath said picture, as a part of the same article, occurred the following:

"Mme. Electra Lynne, Los Angeles beauty specialist, is being held by police in connection with the death of Mrs. H. B. Gilchrist, wealthy woman of Pasadena, Cal. Mrs. Gilchrist died, it is alleged, while undergoing an operation on her face in Mme. Lynne's shop, a delicate procedure called 'face peeling,' whereby blemishes and wrinkles are supposed to be removed."

The caption, picture, name, and statement occupied a little over 4 inches vertical space in the column. Appellee alleged, among numerous other things, that appellee had a good reputation in Hays county where she was reared; that appellant wickedly, unlawfully, maliciously, etc., contrived to secure her photograph, and in like manner publish same for the purpose of injuring appel-

lee in the several ways pleaded; that said article was libelous per se; and that, if not libelous per se, same was reasonably subject to the construction by those who knew appellee as charging her either (1) with being responsible for the death of Mrs. Gilchrist; or (2) with being held by the police for her death; or (3) that she, together with Mme. Electra Lynne, was responsible for such death and was being held by the police for that reason; or (4) that she was living in Los Angeles under the name of Mme. Electra Lynne, running a beauty parlor there, in which Mrs. Gilchrist had died, and that she had been arrested because of such death.

Following such charges, appellee alleged, amongst other damages, that appellee—

"has been and was greatly injured in her good name, fame, respectability, credit, and reputation, and was subjected to financial injury, and was brought into public hatred, ridicule, and contempt, and was disgraced with and amongst her neighbors, friends, and acquaintances and other good and worthy citizens, and plaintiff says that she, by reason of the premises and libelous publication aforesaid, has suffered great mental pain and anguish, humiliation, and mortification and financial injury, and she says that the injury to her good name, respectability, credit, and reputation, her financial injury, the public hatred, infamy, ridicule, and contempt that she has been subjected to, the mental pain and suffering, humiliation, and mortfication that she has suffered and endured, has all been the natural, direct, and proximate result of the aforesaid false and libelous publication, published and printed by defendant of and concerning plaintiff."

At the conclusion of the evidence, the court instructed the jury as follows:

"You are instructed that under the law the publication complained of in plaintiff's petition is libelous, and that plaintiff is entitled to recover such damages as will compensate her for the injuries received from said publication as set out in her petition."

The jury returned a verdict for $7,500, on which judgment was rendered in favor of appellee; hence this appeal.

Appellant brings 41 assignments of error on which it bases 14 points. These points or propositions, however, raise substantially the following issues: (1) Was the article libelous per se? (2) Did the court err in the charge, and in refusing to give the special charges asked by appellant? (3) Were the damages excessive? and (4) The admissibility of certain evidence.

[1-3] What constitutes a libel is defined by the statute in this state (see article 5430, R. S. 1925; article 5595, R. S. 1911), and it is not necessary to set it out here. It is well settled that a publication which falsely charges one with crime, either in express language or by reasonable implication, is libelous per se. A. H. Belo & Co. v. Smith (Tex. Civ. App.) 40 S. W 856; Chapa v. Abernethy (Tex. Civ. App.) 175 S. W. 166; James

v. Fort Worth Telegram Co. (Tex. Civ. App.) 117 S. W. 1029. It is not necessary that the publication charge a crime in express terms. Baten v. Houston Oil Co. (Tex. Civ. App.) 217 S. W. 396. And, if the publication be one which is capable of more than one interpretation or is ambiguous, the real criterion is, What effect would it have upon the mind of the ordinary reader? Belo & Co. v. Smith, supra; 36 C. J. 1155. In case of doubt about the meaning of the publication, it is a question of fact to be decided like any other question of fact in a civil case. Walker v. S. A. Light Pub. Co., 30 Tex. Civ. App. 165, 70 S. W. 555. And, where such publication consists of more than one article, or of a picture printed in connection with an article, they should be considered together and taken as a whole, in determining whether or not such publication is libelous. 36 C. J. 1157.

[4] Appellant's first contention is that said publication does not charge any one with the commission of a crime. We find no merit in this. The article does not do so in express language, but we think that a statement that one is held by the police in connection with the death of another carries with it the reasonable implication that they are either suspected or charged with being criminally responsible for, or connected with, such death, and that they are restrained by legal process.

[5] We have reached the conclusion, however, that the publication in question was not libelous per se. It is admitted that Mrs. Isensee had nothing to do with the death of Mrs. Gilchrist. If the caption "Held in Death," followed by her name and picture underneath, had constituted the entire publication, a more serious question would be presented. If the name of Mme. Electra Lynne had appeared underneath appellee's picture and then the printed article following, the publication would undoubtedly have been libelous, as those who recognized her picture might reasonably have concluded that she was going under that name in California and was therefore charged with the death of Mrs. Gilchrist. Such was the case in James v. Fort Worth Telegram Co., supra, relied upon by appellee. But, in the instant case, the picture is clearly identified as that of Mrs. Isensee. The printed portion, which follows the caption, or headline, expressly names and applies to Mme. Electra Lynne, a beauty specialist. It was the printed portion which followed the headline and implied that a crime had been committed. That printed portion does not refer to Mrs. Isensee. So, taking the publication as a whole, we think it was ambiguous. The average reader could, we think, draw only one of two reasonable conclusions from it; either that Mrs. Isensee's picture had been placed in the article by mistake and that such article did not refer to her; or that

Mrs. Isensee was running a beauty shop in Los Angeles and was there known as Mme. Electra Lynne, and was in fact the person held by police in connection with the death of Mrs. Gilchrist. In the necessary haste and volume of detail required to issue the editions of large daily newspapers, mistakes in the placing and arrangement of type forms, captions, or pictures are not infrequent. Readers of large dailies are no longer surprised at seeing a caption or headline on one subject followed by an article entirely foreign to it; or even to see an article on some person accompanied by the picture of some one else, inserted by mistake.

On the other hand, if the publication, taken as a whole, could and did reasonably imply that Mrs. Isensee and not Mme. Electra Lynne was charged with a crime, or that Mrs. Isensee had assumed the alias of Mme. Electra Lynne in Los Angeles, clearly it was libelous. If that were the only reasonable conclusion to be drawn from the publication, then it was libelous per se, and the court should have so instructed the jury. The rule on this subject is stated in 37 C. J. 102, as follows:

"If the language is obviously actionable per se, it is the duty of the court to so instruct the jury as a matter of law; and it is not for the jury to say what the defendant meant by making the charge. But, if the language is ambiguous and susceptible of two meanings, one defamatory and the other not, it is for the jury to decide in what sense it was used. However, it is for the court to determine whether or not the language on its face is capable of a double meaning and should be submitted to the jury for construction. But when the court is satisfied of that, it must be left to the jury to say whether the publication has the meaning ascribed to it."

See, also, Cotulla v. Kerr, 74 Tex. 89, 11 S. W. 1058, 15 Am. St. Rep. 819; Guisti v. Galveston Tribune, 105 Tex. 506, 150 S. W. 874, 152 S. W. 167; Morgan v. Black, 132 Ga. 67, 63 S. E. 822; Thorman v. Bryngelson, 87 Neb. 53, 127 N. W. 118.

Only three witnesses other than Mrs. Isensee testified to having read this publication, a Mr. Simon and the father and sister of Mrs. Isensee. All of them testified that when they read the article they believed that Mrs. Isensee was being held under arrest for the death of Mrs. Gilchrist. The testimony discloses, however, that appellee's father and sister had kept in touch with her and knew that she was not a beauty specialist and not employed by Mme. Lynne. And, upon cross-examination, Mr. Simon's testimony raised the issue as to whether the article was libelous of any one. Under all the facts and circumstances we think the trial court erred in holding that said publication was libelous per se, and that appellant's special issues 1 to 5, calling for the finding of the jury on the libel charged as issues of fact, should have been submitted.

[6] Even if said publication were libelous per se, the court's peremptory charge to the jury on which they assessed the damages would require a reversal. The jury were instructed that appellee was entitled to recover damages "as set out in her petition." The petition was long. The allegations of damages there contained are numerous, varied, and inclusive. Elements of malice, contrivance, and willful design to injure, disgrace, and defame Mrs. Isensee are alleged. Without setting forth said pleadings, or summarizing the evidence, suffice it to say that the proof falls far short of establishing all the elements of damage alleged; yet the jury was directed to look to the petition, and not to the evidence. It is elementary that a plaintiff can recover only the damages proven under the allegations; and it is the evidence admitted under the pleadings that must be looked to in arriving at same and not the pleadings alone.

[7] There was no error in excluding the proffered testimony of a Mrs. Roby of Los Angeles, that she had requested Mrs. Isensee to leave her apartment house there because she had made herself a general nuisance and was about to cause other tenants to leave. Such testimony was not, we think, a proper way in which to attack her general reputation, nor to mitigate damages thereto, if any, occasioned by being charged with a crime.

In view of another trial, we pretermit a discussion of the question of whether the amount of the damages recovered was excessive.

Appellant's points have not been considered seriatim and in detail, but what we have said disposes of the material issues raised. For the reasons given, the judgment of the trial court is reversed, and the cause remanded for another trial.

Reversed and remanded.